Haynes, J.
A petition was filed in the court of common pleas for the foreclosure of a mortgage, and such proceedings were had that the case came to this court by appeal, and it has been heard upon the pleadings and the evidence.
The action was brought for the forclos'ure of a mortgage that was given in the year 1843 by Thomas Wood upon certain lands in Springfield township in this county, to secure the payment of the purchase price, the lands themselves, being a part of school section 16, and being sold under a special act of the legislature, pasáed March 20th, 1840,. which is found in Yol. 38, Ohio Local Laws, at page 177.
The petition claims, after setting up the mortgage, that there’is still a balance due upon the mortgage of quite a large sum of money, perhaps $1700, and issues are joined, by the defendants upon this petition; and the defense sub *426 stantially is,that the mortgage has long since been paid,and cancelled and satisfied.
The first question that arises in the case, and the important question at the outset, is, as to the manner in which the interest is to be computed upon this mortgage.
The petition, after stating the proceedings in regard to the sale of the property in pursuance of the statute, says:
Thereafter, and on said 9th day of March, A. D. 1843, said auditor, by proper deed and by virtue of the statute in such case made and provided, duly conveyed said west half of the southeast quarter of said sec. 16 to said Thomas Wood, and on the same day, and in order to secure the payment of said purchase money and interest, said Thomas Wood made, executed, and deliverd to the treasurer of Lucas county his certain bond and mortgage deed of that date, whereby by said mortgage deed he conveyed to said treasurer for the use of the common schools of said township No. 2 said land so conveyed to him as aforesaid. Said bond was upon the condition that said Thomas Wood should pay, or cause to be paid, annually to the treasurer of Lucas county, for the use of the common schools of said. township, the interest at 6 per cent per annum, which should accrue upon the sum of $640, for the term of five years from the date thereof, and at the expiration of said five years, should pay or cause to be paid to the said treasurer of Lucas county, for the use of the common schools as aforesaid, said sum of $640.
The bond and mortgage were not paid at maturity, but continued to run for some time; and it is claimed that if paid at all, they were not fully and completely paid up until some time in the year 1884.
The contention on the part of the plaintiff is, that interest is to be paid upon this bond and mortgage with annual rests up to the date of final payment. On the other hand, it is claimed on the part of the defendants that after the period mentioned in the bond for the maturity of the bond and the mortgage also, that interest should be paid at 6 per cent per annum, simple interest.
*427 Section 16, as I have stated, was sold under and by virtue of the provisions of a statute of the legislature of the state of Ohio, which is found among the local laws of the year 1840, in Vol, 38, and is entitled:
“An act to authorize the sale of school section sixteen, in the township number two, in the United States’ twelve mile square, at the foot of the rapids of the Miami of Lake Erie, in the county of Lucas.”
It provides, first, for the sale of the property by first obtaining the permission of the electors of said township.
Sec. 3 provides:
“That so soon as said sec. 16 shall have been surveyed by the said county surveyor into half quarter sections, the said commissioners shall cause to be delivered to the auditor of Lucas county, such survey and plat thereof, and the appraised value of each respective lot or parcel thereof, so made as aforesaid; and it shall be the duty of the auditor, upon receiving the return of said commissioners, to give at least 30 days’ notice, by advertisements set up in five of the most public places in the county of Lucas, or in some newspaper of the most general circulation therein, of the time and place of sale; and pursuant to such notice, he shall, between the hours of 10 o’clock A. M., and at 4 o’clock P. M., at the door of the court-house in said county, proceed to sell the said section in half quarters, to the highest bidder, on a credit of five years, continuing said sale from day to day, if necessary; the interest on the purchase money to be paid annually into the treasury of said county, for the usé of schools in said township: provided, that no lot or parcel of said land shall be sold for less than |3.00 an acre: and provided further, that in case any purchaser at the first sale shall fail to make payment of the sum by him bid therefor, said land shall not be sold at any subsequent sale for less than the appraisement.
“Sec. 4. That the auditor of said county shall, on sale of any part or parcel of said school section being made as aforesaid, make and execute deeds of said section, being made as aforesaid, make and execute deeds of said lands to the purchaser or purchasers thereof, and shall take from the purchaser or purchasers thereof, a mortgage on the said *428 lands'so sold as aforesaid, together with a bond, in the penalty of at least the amount of such purchase money, with good and sufficient security,to the acceptance of said county, as additional security, which mortgage and bond shall be taken in the name of the c aunty treasurer of the county of Lucas, to secure the payment of the purchase money, with interest thereon until paid, at the rate of 6 per cent per annum, and the purchase money at the expiration of five years from the day of sale, to the said county treasurer, for the use of schoos in said township.
• “Sec. 5-. The said county treasurer shall,out of the first money that may come to his hands, of the interest on the purchase money of the sales of said lands, refund to the treasurer of said county, the amount which may have been paid out to said commissioners and surveyor, for the services rendered by them as hereinbefore provided.”
It would seem that within the policy of the legislature this school section 16 was sold specifically for the purpose of supporting schools in the township in which the land was situated, and that its dealings were all to be between the purchaser and the officers of the county, and the money appropriated to these particular schools. That is to say, I should judge from the appearance of things, that it was not intended that the money should go through the hands of officers of the state, or go into the permanent fund provided for in the statutes of the state for the support of the schools.
In our judgment, the question as to whether interest is to be paid with annual rests is dependent upon this statute, and upon the terms of the contract. I do not know but that within the holding of the courts of that day, or the understanding of the members of the bar at that time, this statute was drawn with clear and well defined views in the mind of the person who drew it; but under the decisions of the supreme court, as they stand to-day, there is some inconsistency in the statute, or at-least some seeming inconsistency. It will be-observed that the sale is to be made to the highest *429 bidder cm a credit of five years, ¿nd then, and not just at that' point, the interest on the purchase money to be paid annually in to the treasury of said county. There is nothing said about the rate, there is nothing said about the time or terms upon which it shall be paid, except that the interest shall be paid annually; nothing said as to how it shall be secured, or in what manner. That is all left for a subsequent section to settle. The law being drawn in that manner, is a little difficult to understand. However, in sec. 4, when the statute comes to provide for the making of deeds conveying the title, and then securing the purchase price, it is quite clear and explicit. It provides, first, that there shall be taken, first, from the purchaser a mortgage on the said lands so sold; then it provides that a bond shall also be taken with a penalty to the amount of the purchase money, with a good and sufficient security, to the satisfaction of said county, as additional security. That is to say, he has to secure it by mortgage upon the land, and he has to give in addition to that a bond for the payment of the money, to the acceptance of the county. You notice he deals sometimes with the treasurer, sometimes with the auditor, and sometimes with the county itself. “Which mortgage and bond shall be taken in the name of the county treasurer of the county of Lucas, to secure the payment of the money, with interest thereon until paid, at the rate of 6 per cent per annum, and the purchase money at the expiration of five years from the day of sale, to the said county treasurer, for the use of schools in the said township.” I have already said that it is possible that the drawer of that considered that the statement which is expressed in this statute that interest is to be paid at the rate of 6 per cent per annum, meant that it was to be paid annually; but in the case of Patrick v. McConnell, 10 Ohio St. 348, which stands to-day a the law of the state, it is clearly pointed out that the phrase “six per cent, per annum” means that interest is to be paid at 6 per cent for *430 the time being, by the year, instead of by the month or by the six months, or any other date: it is simply the rate as to time. It follows from that decision that if a party seeks to have an instrument draw interest payable annually, it must be expressed in that form.
Under the powers that were granted to these officers, and the duties that it was incumbent upon them to perform, they were to take a mortgage and a bond, the bond to provide that the interest on the sum of $640 — in this case, interest on an amount equal to the amount for which the land was sold — should be paid to the county, for the period of five years ,and at the expiration of that time, that the whole sum should be paid. It was contemplated, of course, that the officers would take the bond in that form, and that the mortgage would be paid at that time, and that would be the end of the matter. It happened, though, in this case, that the money was not paid at the expiration of the time. The question arises, then, as to the rights of the parties, if the petition correctly states the condition of the bond. There is no copy of the bond attached. The bond itself has either been delivered to the grantors or their representatives, or is lost. The condition of the mortgage is that the mortgagor, “Wood, shall pay or cause to be paid annually to the treasurer of the county of Lucas for the use of common schools as aforesaid, the interest at 6 per cent per annum, which shall accrue upon the sum of $640, for the term of five years from the date thereof, and at the expiration of said five years, shall pay or cause to be paid to the said treasurer the sum of $640.’’
The only statute that was in force at that time in regard to interest, so far as I can discover, is to be found in the statutes of Ohio — '“Swan’s Statutes,’’ as they are commonly called — of 1841, at page 465. It provides:
“That all creditors shall be entitled to receive interest on *431 all money, after the same shall come due, either on bond, bill, promissory note, or other instrument of writing, or contract for money or property; on all balances due on settlement between parties thereto, or money withheld by unreasonable and vexatious delay of payment; and on all judgments obtained from the date thereof; and on all decrees obtained in any court of chancery, for the payment of money, from the day specified in the said decree for the payment thereof, or if no day be specified, then from the day of the entering thereof, until such debt, money or property is paid; at the rate of six per centum per annum and no more. ”
The former act was repealed.
Now, if the party who drew this bond and mortgage, had drawn the mortgage in accordance with sec. 4 of the statute, we are unable to see how he could have drawn it otherwise than that the mortgage should draw interest at the rate of 6 per cent per annum until paid. That is the direction of the statute; that is all the authority that is granted to him. If he passed beyond that, he would have been acting ultra vires.
It, perhaps, would be a proper construction of the statute to hold that the bond should have been drawn in the form in which it was — a bond for the payment of the sum of |640, with a provision that interest at the rate of 6 per cent per annum should be paid annually during the period of five years upon the sum. If the bond had been drawn in the form which I have suggested, it seems to us there would be no question but what, according to the expressed condition of the bond itself, it would draw interest annually for the period of five years, and five years only, and at that time it would draw interest according to the terms of the statute and according to the practical conditions of the bond and mortgage, and at and for the sum of 6 per cent per annum. Now, the condition of the bond as recited in the mortgage, and also as recited in the copy of the mortgage which has been produced in court, is, that the mortgagor “shall pay *432 interest at 6 per cent per annum, which shall accrue upon the sum of $640 for the term of five years from the date thereof, and at the expiration of said five years, .shall pay or cause to be paid to the said treasurer the full sum of $640.” There is no agreement that he shall pay interest annually after that date; there is no statute: and where a contract of that kind is drawn to pay interest down to a certain date, interest may be computed to this time with annual rests, as in that contract. In fact, the only statute in force, as I have read, is, that after the money becomes due, or the bond, or note, interest should be computed at the rate of 6 per cent per annum, and no more.
Our conclusion is very clear that the contract provides that interest should be paid annually for the period of five, years, and that there is no contract for the payment of interest annually for any period of time after that; and that the statute under which the bond and mortgage were taken, provides only for the payment of interest annually for the period of five years, and that under the decisions of the supreme court of the state of Ohio, the true construction of the language of that statute is, no matter what the party had in mind who drafted the act at the time it was passed, interest is to be computed simply at 6 per cent per annum from the time the mortgage fell due down to the date o payment. So that in whatever light we view the whole transaction, we are led to the same conclusion: that the contention on the part of plaintiff that the county is entitled to interest with annual rests after the bond and mortgage became due, cannot be sustained.
We understand that under the agreement of parties, under the construction of the statute and of the mortgage, if is conceded and agreed that the whole sum of $640 and interest has been fully paid. We therefore have not looked into the many interesting questions that have been discussed by counsel in the case, but simply content ourselves with *433 arriving at a proper conclusion upon the proper construction of the contract. It will therefore follow that the plaintiff’s petition will be dismissed at his costs, and that the defendants will have judgment for costs against the plaintiff.
Geo. P. Kirby, for Plaintiff,
Ó. W. Everett and Chas. T. Lewis, for .Defendants.